DETERMINED IN THE

# SUPREME COURT,

| 41 | 507 |
| 98 | 313 |
| 41 | 507 |
| 122 | 369 |

## JULY TERM, 1871.

[No. 2,786.]

## THE PEOPLE OF THE STATE OF CALIFORNIA ON RELATION OF TIMOTHY J. JENKINS v. GEORGE DUNCAN AND WILLIAM BLACKMORE.

TURNPIKE FRANCHISE NOT ASSIGNABLE EXCEPT WITH CONSENT OF GRANTOR.—A franchise to construct a turnpike road and collect tolls thereon is a personal trust reposed in the grantee, and is not assignable either at forced sale or by voluntary conveyance, except with the consent of the granting power.

A FRANCHISE DOES NOT PASS TO ASSIGNEE IN BANKRUPTCY.—A franchise to construct a turnpike road and collect tolls thereon, being a personal trust, not assignable without the consent of the granting power, does not pass, by virtue of an assignment under the United States bankrupt law, to the assignee in bankruptcy.

TRANSACTIONS CONSTITUTING VALID TRANSFER OF FRANCHISE.— Where the owner of a turnpike road franchise became a bankrupt and the assignee in bankruptcy sold the franchise to a third person, and the bankrupt acquiesced in the transfer, relinquished all his title, and delivered possession of the road and its appurtenances to the purchaser, and afterwards the Board of Supervisors—the grantors of the franchise—assented to the transfer and authorized the purchaser to collect the tolls; *held*, that, though the fran-

chise, being a personal trust, did not pass by virtue of the assignment in bankruptcy, the whole transactions constituted a valid transfer of it by the owner, with the consent of the granting power.

APPEAL from the District Court of the Thirteenth Judicial District, Mariposa County.

This was an action in the nature of quo warranto, brought in the name of the People by the Attorney General against the defendants, to oust them from the use and enjoyment of a certain turnpike road franchise from Ross' Ranch to Bear Valley, in Mariposa County. It appears that the franchise was granted by the Board of Supervisors of that county to the relator, Jenkins, on March 3d, 1862, for a period of ten years. In May, 1868, Jenkins filed a petition in bankruptcy in the United States District Court, and after proper proceedings had, all his estate was conveyed to Henry C. Hyde, as the assignee in bankruptcy. In March, 1869, Hyde, as such assignee, sold the franchise to the defendant, George Duncan, the chief creditor of the bankrupt; and afterwards, upon Duncan's demand, Jenkins surrendered to him full and complete possession of the road, the franchise, and all papers relating to them, and signed a paper to that effect; and also conveyed the land through which the road ran. Subsequently, but after this action was commenced, Duncan applied to the Board of Supervisors, setting forth the facts of his purchase and possession; and the Board, by an order entered on its minutes, assented to the sale, authorized him to collect the tolls for the balance of the term originally granted, and granted him a franchise to that extent, at the same time vacating the order granting such right to Jenkins.

In addition to the foregoing facts, the Court below found that the grant by the Supervisors to Duncan was with a reservation to vacate the same if it should eventually be established that Duncan was possessed of no rights in the road and improvements; that Jenkins had demanded pos-

session of the road before suit and was refused; and that the deed from Hyde, as assignee, was never authorized by the United States District Court, nor made with its consent, nor was the sale ever ratified by it. As conclusions of law, the Court found that no rights passed to Duncan or Blackmore, his agent and employé, by virtue of the deed from Hyde; that they had usurped the right to collect tolls; and that Jenkins was entitled to the use and enjoyment of the franchise. Judgment for plaintiff was entered in accordance with the findings, and defendants appealed.

*Alex. Deering,* for Appellants.

It is not contended on the part of the appellants that a franchise is the subject of a forced sale; but we do insist that it, with the appurtenances—such as the road and improvements—is a species of property that passes into the hands of an assignee in bankruptcy, and would be capable of being devised. (3 Greenleaf's Cruise, Chap. III, Secs. 20–22; *Stewart* v. *Hargrove,* 23 Ala. 429.) ` But were the sale by the assignee valueless for any reason, that does not make the case better for Jenkins, for by his application in bankruptcy he became divested of every particle of property not exempt from execution. He surrendered all. He obeyed the assignee's order, and delivered up the road, and conveyed to Duncan the land claim "through which the road run." This was surely in itself an abandonment—a complete surrender of the charter or franchise—and was recognized by the Supervisors as such when they assented to the sale. A franchise may be conveyed with the consent of the granting power. This is a well settled principle of law, and is recognized in the case of *Wood* v. *The Truckee Turnpike Co.,* 24 Cal. 487.

*James C. Cary* and *P. D. Wigginton,* for Respondent.

The present Bankrupt Act excepts from the operation of

the assignment all property exempt from levy and sale upon execution. The road and franchise here were exempt from such a sale, and consequently did not pass to the assignee. (*Monroe* v. *Thomas*, 5 Cal. 471; *Thomas* v. *Armstrong*, 7 Cal. 287; *Woods* v. *Truckee Company*, 24 Cal. 479.)

But, even if the franchise passed to the assignee, the sale by him to Duncan was a nullity, being made without notice, at private sale, and without an order of Court. (Bank. Act, Sec. 20; *In re. Lewis F. Solmons*, 1 Bank. Reg. 42; *In re. Taylor R. Stewart*, 2 Bank. Reg. 19.)

The franchise, however, did not pass to the assignee, and he had no authority either to demand or receive it, much less to clothe Duncan with authority to demand or receive it. The surrender of the franchise could only be made to and accepted by the Board of Supervisors, and it does not appear that the relator at any time ever surrendered to the Board. It was not within his power to make a valid transfer of it, and it could not be made the subject matter of a voluntary assignment or sale.

The order of the Board of Supervisors assuming to vacate the franchise was void, because it was made without notice; because neither the pretended sale nor surrender authorized the Board to make it; and because Jenkins held a vested right for the term, which could only be divested after due proceedings had, according to law and for cause shown.


By the Court, CROCKETT, J.:

In *Wood* v. *Truckee Turnpike Company*, 24 Cal. 474, it was decided that a franchise to construct a turnpike road and collect tolls thereon is a personal trust reposed in the grantee, and is not assignable either at forced sale or by voluntary conveyance, except with the consent of the granting party. In *Monroe* v. *Thomas*, 5 Cal. 470, the same proposition was maintained in respect to a ferry franchise, and the principle

was reaffirmed in *Thomas* v. *Armstrong,* 7 Cal. 289. Accepting this as a correct exposition of the law, the title of Jenkins to the franchise was not only exempt from execution, but was incapable of being made the subject of a voluntary conveyance by him, except with the consent of the granting power. Waiving any opinion on the point whether a franchise is property exempt from execution, in the sense of section fourteen of the bankrupt law of the United States, and which, for that reason, would not pass to the assignee, it is obvious that if it is a personal trust, not assignable without the consent of the granting power, the assignee in bankruptcy does not acquire it by virtue of the assignment. He can take nothing which the bankrupt could not voluntarily assign, unless it be property previously conveyed by him, in fraud of creditors or of the law. I am, therefore, of opinion that the title of Jenkins did not pass to his assignee in bankruptcy. If this were the whole case the defendant would be without title. But it appears from the findings, that after the conveyance from the assignee to the defendant (Duncan), Jenkins acquiesced in the transfer, and not only relinquished all his title, but delivered the possession of the road and its appurtenances to Duncan. Subsequently the Board of Supervisors (from which the franchise was originally obtained) not only assented to the transfer, but expressly authorized Duncan to collect the tolls. Under the authorities already cited, this must be deemed a valid transfer of the franchise by Jenkins, with the consent of the granting power from whom it was originally derived.

Judgment reversed, with an order to the Court below to enter judgment for the defendant on the findings.

Mr. Justice TEMPLE did not participate in the foregoing decision.