ALICE TOPPER, Appellant, v. W. W. MAPLE, Appellee.

NEGLIGENCE: Acts Constituting Negligence—Operation of Auto-
1  mobile—Evidence. Evidence attending a rear-end collision of
   an automobile with a buggy reviewed, and held to present a jury
   question on the issue of defendant's negligence.

EVIDENCE: Judicial Notice—Time of Sunset. It seems that the
2  court will take judicial notice of the time the sun sets, even

though, in order to determine said time, the court is compelled to resort to an independent investigation.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

NOVEMBER 17, 1917.

ACTION to recover damages for personal injuries caused by reason of the alleged negligence of defendant, in running into the rear of plaintiff's buggy with an automobile driven by defendant. The transaction occurred August 19, 1915, at about 8 P. M., at the intersection of Southeast Sixth Street with the Burlington Railroad tracks in Des Moines, Iowa. Trial to a jury, and at the close of the testimony, the trial court sustained defendant's motion for a directed verdict. Plaintiff appeals.—*Reversed and remanded.*

*Francis L. Meredith* and *Tomlinson & Gilmore,* for appellant.

*Cohen & Cohen,* for appellee.

PRESTON, J.—1. The grounds of negligence, briefly stated, are, substantially, that defendant was running his automobile in a negligent and dangerous manner, at a dangerous rate of speed; that defendant did not exercise the proper degree of care and attention to control the movement of his automobile, and did not stop soon enough.

1. NEGLIGENCE: acts constituting negligence: operation of automobile: evidence.

. There is a conflict in the testimony at some points, but it is either admitted or there is evidence tending to show that plaintiff, accompanied by her son, left the home of her daughter at 1521 Maple Street, Des Moines, Iowa, at 7:30 P. M., and drove their horse and buggy in a south and westerly direction, arriving at the railroad crossing in ques-

tion at or before the hour of 8 o'clock P. M., according to plaintiff's testimony, and 8:30 according to defendant's. The son, 15 years of age, who was driving, was in the exercise of ordinary care. They heard no warning of the approach of the automobile from behind, when the buggy was struck by defendant's automobile, demolishing the buggy, throwing the occupants to the street, and throwing the horse so that it lay upon its back. Defendant was driving his car at the rate of 10 to 12 miles an hour, according to some of the testimony, and he testifies, 8 miles. Defendant's testimony is that it was dark, but plaintiff's evidence is that it was not very dark. The street lights were on. They could see a distance of about 100 feet. Another automobile was approaching from the opposite direction, about 150 feet distant. It is claimed by defendant that the driver of this approaching automobile did not apply his dimmers, and that the light blinded the defendant so that he could not see anything, just before he struck the buggy; that he was right in the light as he was approaching plaintiff's buggy from the rear. But plaintiff's testimony is that the rays of light from the approaching automobile were not directly in front of her, but were to the left of her buggy. Defendant contends that this third party was violating one of the ordinances of the city in failing to apply his dimmers. There was no red tail light in the rear of plaintiff's buggy. Plaintiff's horse was trotting slowly near the curbing. She says she did not notice any automobile lights from the rear. Defendant says he applied his dimmers just before he struck the buggy, and that before that his lights had been on full. Defendant was making a professional call, and says that he and the party with him were having a good deal of argument in regard to his dimmer lights; that, when he came into the zone of light, as he calls it, from the approaching automobile, it blinded him, and at that instant he heard a

crash, and he found he had run into plaintiff's buggy; that he stopped his car instantly; that his machine did not go more than from 15 to 30 feet after he turned on his dimmer lights. He says he did not see any buggy ahead of him. This is the substance of the testimony bearing upon the question as to whether the defendant was negligent or not.

Defendant's motion for directed verdict is on the grounds, first, that defendant was not negligent because he was driving his car at a rate of speed between 10 and 15 miles an hour, and that, under the ordinance, he was not limited to 15 miles an hour at the place of the accident; second, that the plaintiff was guilty of contributory negligence in failing to have a red light attached to the rear of the vehicle; and third, that there was concurring negligence of the third party approaching with an automobile.

Under this record, we think it was a question for the jury to say whether, under all the circumstances, defendant was negligent in the matters charged. It was a question for the jury to determine whether defendant was, as he claimed, within the light from the approaching automobile and blinded thereby, and whether he was, under all the circumstances, considering the distance and the other facts, within the light zone and blinded, and whether he was negligent in driving at the rate of speed he was, under the circumstances shown.

2. The point most strongly relied upon by defendant to sustain the ruling of the district court is that plaintiff was guilty of contributory negligence in failing to have a red tail light in the rear of her buggy, as provided by an ordinance of the city, which was introduced in evidence. The ordinance provides that this is required during the period from one hour after sunset to one hour before sunrise. But there was clearly a conflict in the testimony whether

2. EVIDENCE: judicial notice: time of sunset.

it was, at the time of the accident, one hour after sunset. If it was not, no red light was required. As said, defendant claims the accident was at about 8:30 o'clock. Testimony for plaintiff is that it was about 8 o'clock, some of it tending to show that it was before 8. Plaintiff says that after the accident defendant looked at his watch and stated that it was then just 8 o'clock. The only evidence in the record as to the time the sun set is that it was about 6:30 or 7 o'clock. Even under this evidence, the jury could have found that the accident was not an hour after sunset. But this testimony as to the time the sun went down is very indefinite, and is of but little help. It could, if necessary, have been proved with but little trouble.

Appellant contends that we should take judicial notice of this matter, but no cases are cited. We said, in *Haaren v. Mould,* 144 Iowa 296, substantially that judicial notice does not depend upon actual knowledge of the judge, but that he is at liberty, when the question arises, to investigate and refresh his recollection by any means which he deems sufficient and proper. Bradner on Evidence (2d Ed.), page 186, citing *People v. Chee Kee,* 61 Cal. 404, states that courts will take judicial notice of the time when the sun rises and sets during different days and seasons. See also 15 R. C. L. 1100 and 1101. Counsel for appellant, in argument, say that, on the date in question, the sun set at 9 minutes after 7. Our investigation shows that it was 7 minutes after. It was for the jury to find from the evidence the time of the accident.

Appellee makes some contention that the accident was because of the negligence of the party approaching in another automobile without applying his dimmers, or at least that this was a contributing influence, and the concurrent negligence of a third party. But, under the entire record, we are of opinion that the case should have been submitted to the jury, under proper instructions.

The judgment is reversed and remanded for proceedings in harmony with the opinion.—*Reversed and remanded.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.