MARTHA SCHRADER v. RALPH L. KRIESEL, SOLE TRADER
d.b.a. DOWNTOWN CHEVROLET COMPANY.
CHARLES SCHRADER v. SAME.[1]

December 22, 1950.

No. 35,177.

[1]Reported in 45 N. W. (2d) 395.

*Brenner & Bouchard* and *Robert L. Schnell*, for appellant.
*Fred O. Dressel* and *Ray F. Merriam*, for respondents.

LORING, CHIEF JUSTICE.

These appeals arise out of two tort actions in which plaintiffs, husband and wife, are suing defendant, a used-car dealer, in connection with injuries sustained by the wife while walking on the business premises of defendant. The actions are for personal injuries to plaintiff Martha Schrader and medical expenses and loss of services to plaintiff Charles Schrader. Verdicts were returned in favor of both plaintiffs. Defendant moved for judgment notwithstanding the verdicts or in the alternative for a new trial. These motions were in all respects denied. The relief sought in these appeals is a reversal of the orders denying defendant's alternative motions.

These actions arose out of an accident which occurred on November 18, 1947, between 5:30 and 6 p. m. The accident occurred in an outdoor used-car lot operated by defendant. Defendant's used-car lot occupies two-thirds of a city block located at the intersection of Huron and Hennepin avenues in the city of Minneapolis. A string of lights surrounded the lot. The power of the lights and the height at which they were located is not indicated

in the record. There was a floodlight located in the center of the lot, the beam of which was directed at a small office building at the northern end of the lot and halfway between its east and west boundaries.

The weather conditions at the time of the accident are described in weather reports which tend to prove that snow began falling at 11 p. m. on November 17, 1947, and ended at 9:30 a. m. November 18, when light snow and a light freezing drizzle began. The light snow and freezing drizzle ended at 10:50 a. m. on November 18. Snowfall on November 18 was two inches. The average depth on the ground at 6:30 p. m. on November 18 until midnight was 3.5 inches. Defendant's lot at the time of the accident was described by witnesses as being covered with loose snow and with ice or hard snow underneath. It is conceded that there were lumps of ice on the lot and that the surface of the lot was made bumpy and rough by hummocks, ruts, and ridges. At the time plaintiffs entered the car lot on the evening of November 18 it was getting dusk, and the driveway, where plaintiffs entered the car lot, was dimly lighted.

Plaintiffs had been on the used-car lot November 14, 1947, at which time they had selected a used car and made a down payment on it to defendant. On the evening of the accident, plaintiffs were returning to close the transaction begun on the 14th. Plaintiffs entered the lot at the eastern or Hennepin avenue entrance and walked along a roadway between the parked cars on display in the lot. This roadway led to the small business office located about the center of the north line of the lot. About halfway between Hennepin avenue and the small office building, Mr. Schrader stopped to look at a car which had attracted his attention, and he called his wife over to look at it. When Mrs. Schrader started toward her husband, she slipped in a rut and fell, breaking her leg. The rut in which Mrs. Schrader slipped was two or three inches deep, five or six inches wide, and appeared to have been made by a car wheel. Mr. Schrader testified that he saw a

skid mark about a foot long where his wife's left foot had slid toward the rut. Mrs. Schrader was wearing overshoes at the time of the accident. She testified that on entering the lot she had noticed that its surface was rough, that she did not see any ruts, and that the hummocks of ice were covered with snow. She also testified that she had observed the surface of the lot during her previous visit on November 14, that there was snow and ice on it, but that it was not as bad as on the night of the accident. Plaintiffs, however, did not use the Hennepin avenue entrance on their previous visit, and Mrs. Schrader'had not been on the roadway where she ultimately fell.

On these appeals defendant has raised three issues:

(1) Did the evidence present a jury issue on the question of defendant's negligence?

(2) Did the evidence present a jury issue on the question of defendant's negligence being the proximate cause of plaintiff's injury?

(3) Was Mrs. Schrader contributorily negligent as a matter of law?

Ordinarily, of course, questions of negligence,[2] contributory negligence,[3] and proximate cause[4] are questions of fact for the jury where reasonable men may differ as to what constitutes ordinary care and proximate causal connection upon the evidence presented.

[2]Bartley v. Fritz, 205 Minn. 192, 285 N. W. 484; Anderson v. Johnson, 208 Minn. 373, 294 N. W. 224; 4 Dunnell, Dig. & Supp. § 7048.

[3]Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758; Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Montgomery Ward & Co. Inc. v. Snuggins (8 Cir.) 103 F. (2d) 458; see, also, 4 Dunnell, Dig. & Supp. § 7033.

[4]Anderson v. Johnson, 208 Minn. 373, 294 N. W. 224; Montgomery Ward & Co. Inc. v. Snuggins (8 Cir.) 103 F. (2d) 458; Smith v. Carlson, 209 Minn. 268, 296 N. W. 132; Sankiewicz v. Speckel, 209 Minn. 528, 296 N. W. 909; see, also, 4 Dunnell, Dig. & Supp. § 7011.

The rule and the exception, in the case of negligence, has been correctly stated as follows:

"* * * the question of negligence is generally for the jury; and 'it is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.'" May Dept. Stores Co. v. Bell (8 Cir.) 61 F. (2d) 830, 840.[5]

The rule and the exception, as stated above, are equally applicable with reference to questions of proximate cause[6] and contributory negligence.[7]

In reviewing the lower court's rulings on defendant's motions, the question presented is whether there was substantial evidence to sustain the verdicts. In determining that question, we must accept as true the evidence favorable to the party against whom the motion runs, and he is entitled to the benefit of all favorable inferences that may reasonably be drawn therefrom. If the evidence so considered was such that reasonable men might reach different conclusions, then the case was one for the jury.[8]

■ On the issue of defendant's negligence, the evidence introduced was that defendant's outdoor used-car lot was in a "bumpy" or "rough" condition generally; that at the particular place where plaintiff fell there was a rut or tire track two or three inches deep

---

[5]See, also, Champlin Refining Co. v. Walker (8 Cir.) 113 F. (2d) 844; Bartley v. Fritz, 205 Minn. 192, 285 N. W. 484; Turner v. N. P. Ry. Co. 207 Minn. 187, 290 N. W. 563.

[6]Montgomery Ward & Co. Inc. v. Snuggins (8 Cir.) 103 F. (2d) 458; Turner v. N. P. Ry. Co. 207 Minn. 187, 290 N. W. 563; see, also, cases cited in footnote 4, *supra*.

[7]Dragotis v. Kennedy, 190 Minn. 128, 250 N. W. 804; Peterson v. Doll, 184 Minn. 213, 238 N. W. 324; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213; see, also, cases cited in footnote 3, *supra*.

[8]Johnson v. Evanski, 221 Minn. 323, 327, 22 N. W. (2d) 213, 215; Goldfine v. Johnson, 208 Minn. 449, 294 N. W. 459; Eklund v. Kapetas, 216 Minn. 79, 11 N. W. (2d) 805; Clark v. C. & N. W. Ry. Co. 226 Minn. 375, 33 N. W. (2d) 484; Johnson v. Johnston, 226 Minn. 388, 33 N. W. (2d) 53.

and five to six inches wide; that the surface of the lot generally—and at the point where Mrs. Schrader fell—was icy and covered with snow; that the portion of the lot where she fell was a dimly lighted entrance or driveway to the car lot; and that defendant knew of these conditions and had done nothing to change or improve them. Under the rule already stated, we may take this evidence to be true and hence to represent the facts. We may add to this the admitted facts that defendant's used-car lot was a place of business to which customers were invited and that plaintiffs were on defendant's premises for the purpose of transacting business. On these facts, one question presented is: What care was defendant bound to exercise with respect to maintaining a safe entrance to his premises? Viewing the present cases in that light, the case of Dore v. Swift & Co. 175 Minn. 545, 546, 221 N. W. 904, 905, is conclusive on the facts here presented. In the Dore case, plaintiff was a woman seeking employment at defendant's plant. She arrived at the plant about 7 a. m. of April 5, which followed a night of sleet and snow. The defendant's guard on the premises offered to show her the way to the employment office, and advised her: "Be kind of careful, it may be a little slippery here this morning." It was slippery. Plaintiff fell and was injured. The jury returned a verdict for plaintiff. When defendant appealed from an order denying its alternative motions for judgment notwithstanding the verdict or a new trial, this court held that defendant's negligence was a question of fact for the jury, and the order was affirmed. A case similar to the present ones arose in Missouri when a customer slipped and fell on the icy and snow-covered driveway of a store's free parking lot. Defendant there contended that weather conditions made it impossible to remove ice and snow from its parking lot within an hour after it had stopped snowing and that no jury could be allowed to predicate a finding of negligence upon its failure to do so. The court refused to consider the broader question of what defendant's duty was with respect to the whole parking lot, stating, "We are concerned in this case, * * * only with its alleged negligence as to

the driveway." Evans v. Sears, Roebuck & Co. (Mo. App.) 104 S. W. (2d) 1035, 1040. Certainly, the alleged impracticability of keeping defendant's premises safe does not loom so large when the place where the injury occurred was a driveway that could have been cleared of ice and snow or, at least, sanded. We think that a finding of negligence on defendant's part is amply sustained by the evidence showing failure to maintain a safe pedestrian entrance to his place of business. We do not, however, need to rest these cases solely upon that narrow basis because of the manner in which this particular accident occurred. Here, plaintiffs were on defendant's business premises for the purpose of closing a transaction for the purchase of a car. The transaction had not been closed, and Mr. Schrader, at least, was still looking at other cars on the lot as he entered. He noticed a car that interested him and called his wife's attention to it. It was at that moment that Mrs. Schrader fell and was injured. On these facts, we have the situation of customers examining merchandise in a place of business, and the question squarely presented is whether we should hold that an operator of an outdoor business has exercised reasonable care for the safety of his customers although he has done less in that direction than would be required if he were conducting his business in a closed building.[9]

This problem comes to this court as one of first impression. Indeed, this exact problem appears not to have arisen elsewhere either. In the absence of cases directly in point, defendant has relied heavily upon a statement made in Restatement, Torts, § 343, *comment e,* as follows:

---

[9]The duty owed to business invitees generally is well stated in Anderson v. Winkle, 213 Minn. 77, 80, 5 N. W. (2d) 355, 357, as follows:

"A possessor of premises used by business visitors, while not an insurer of their safety, is bound to exercise reasonable care to construct and to maintain his premises in a reasonably safe condition for their use. The duty is continuing in nature. * * * Reasonable inspection during such use is a duty incident to the maintenance of the premises."

"In determining the extent of preparation which a business visitor is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance."

In applying this broad principle, defendant points to the size of his car lot—two-thirds of a city block—and to the fact that his business property is exposed to the elements by its nature and is driven over by automobiles as an incident of its use as a car sales lot. He therefore contends that it is unreasonable to expect him to keep his lot free from snow and ice and its surface free from ruts or even sanded. The weakness of defendant's argument lies in the fact that a used-car lot is in the nature of a place of business and that its purpose is to display automobiles to customers invited on the premises. This court held in Ober v. The Golden Rule, 146 Minn. 347, 178 N. W. 586, that because a merchant invites customers to look at his merchandise instead of at their footing he is under a legal obligation to maintain a reasonably safe walking surface for customers. In the case cited the court said (146 Minn. 348, 178 N. W. 586):

"* * * A shopkeeper is under legal obligation to keep and maintain his premises in reasonably safe condition for use as to all whom he expressly or impliedly invites to enter the premises. * * * Plaintiff had the right to walk along the rows of tables to examine the goods defendant had placed upon them for the very purpose of catching the eye and attracting the attention of its customers. It could not reasonably expect that customers absorbed in the inspection of goods thus displayed would bestow the same degree of attention to their steps or to the floor as would properly be required at places where it would not be likely that they would have eyes only for a merchant's display of his wares."

■ We can see no material difference in the applicable principle of law between the vendor of automobiles on display in an outdoor lot and the vendor of dry goods on display in a store; nor can we see any reason why a merchant who conducts his business outdoors should be allowed to invite a customer's attention away from his

footing and toward goods on display without, at the same time, providing a reasonably safe surface on which to walk. The only reason which defendant has given the court for releasing him from the duties imposed upon businesses generally is that keeping his premises safe is made difficult by the weather. This has not been held a sufficient reason to relieve other businessmen from the duty of keeping the outdoor approaches to their premises reasonably safe. Dore v. Swift & Co. 175 Minn. 545, 221 N. W. 904. Merely because a businessman undertakes to do business under adverse conditions is slight reason to acquit him of responsibility for shortcomings arising out of such conditions. Defendant cannot be allowed to reap the benefits arising from the presence of customers at his place of business and be remiss in performing his duty to exercise due care for their safety whenever performance of that duty becomes difficult. We think that the Ober case states the correct rationale of the rule requiring merchants to provide reasonably safe footing for their customers. Since customers are invited to look at the merchandise on display rather than at the floor, merchants are obligated to see that walking surfaces are not unduly hazardous. This rationale admits of no exceptions for outdoor businesses. Taking this view of the present cases, there is no basis for taking the issue of defendant's negligence from the jury.

■ Defendant's contention with respect to plaintiff's contributory negligence is that it is clear as a matter of law that plaintiff assumed the risk of walking on the used-car lot. In this state, although a distinction between contributory negligence and assumption of risk is recognized, it has been held that the doctrine of contributory negligence includes the doctrine of assumption of risk. In the case of Hubenette v. Ostby, 213 Minn. 349, 350, 6 N. W. (2d) 637, 638, this court held that—

"where plaintiff puts himself in a position to encounter known hazards which the ordinarily prudent person would not do, he assumes the risk of injury therefrom. Such assumption of risk is but a phase

of contributory negligence and is properly included within the scope of that term."[10]

Notwithstanding the above rule, it must be recognized that the phase of contributory negligence which is known as assumption of risk is to be distinguished from contributory negligence in the broader sense. Notice or knowledge and appreciation of the danger are indispensable to an assumption of risk. City of Winona v. Botzet (8 Cir.) 169 F. 321, 23 L.R.A.(N.S.) 204. Assumption of risk involves comprehension that a peril is to be encountered and a willingness to encounter it. It differs from contributory negligence, based on carelessness, by being an exercise of intelligent choice. People's Drug Stores, Inc. v. Windham, 178 Md. 172, 12 A. (2d) 532; Hunn v. Windsor Hotel Co. 119 W. Va. 215, 193 S. E. 57; Warner. v. Markoe, 171 Md. 351, 189 A. 260; Thomas v. Quartermaine [1887] 18 Q. B. D. 685. The importance of distinguishing between contributory negligence and assumption of risk has been frequently discussed by legal writers.[11] In Hunn v. Windsor Hotel Co. 119 W. Va. 215, 217, 193 S. E. 57, 58, the court said:

"The doctrines of contributory negligence and of assumption of risk are not identical, yet the distinction between them has not always been closely observed in our opinions. This failure, so far, has not affected the integrity of the decisions; but approach to these doctrines will be more orderly if the distinction be marked. The essence of contributory negligence is carelessness; of assumption of risk, venturousness."

Professor Prosser in his treatise on torts has commented as follows (Prosser, Torts, § 51, p. 379):

[10]The statement has been cited with approval in Schroepfer v. City of Sleepy Eye, 215 Minn. 525, 532, 10 N. W. (2d) 398, 402; Landru v. Stensrud, 219 Minn. 227, 229, 17 N. W. (2d) 322, 323; Johnson v. Evanski, 221 Minn. 323, 325, 22 N. W. (2d) 213, 215.

[11]Prosser, Torts, § 51; Bohlen, *Voluntary Assumption of Risk*, 20 Harv. L. Rev. 14, 18; Buford, *Assumption of Risk Under the Federal Employers' Liability Act*, 28 Harv. L. Rev. 163, 183.

"* * * In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, and that to the extent that this can be found recovery will be denied; while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be."

It is apparent from the foregoing discussion that material distinctions exist between contributory negligence and assumption of risk. A party seeking to avail himself of the defense of assumption of risk will do well to make the distinction in his pleadings. There is often, as here, a regrettable tendency to blur these distinctions, and we wish to make it clear that those cases in which this court has held assumption of risk to be a phase of contributory negligence are not to be construed as merging the two defenses. There are, of course, certain cases where an assumption of risk may be so unreasonable as to constitute contributory negligence. Powell v. Berry, 145 Ga. 696, 89 S. E. 753, L. R. A. 1917A, 306; Markovich v. Schlafke, 230 Wis. 639, 284 N. W. 516; Clise v. Prunty, 108 W. Va. 635, 152 S. E. 201. That this was the kind of case referred to by this court in Hubenette v. Ostby, 213 Minn. 349, 6 N. W. (2d) 637, is clear from the language which refers to a plaintiff who puts himself in a position to encounter known hazards which the ordinary prudent person would not do. That assumption of risk becomes a phase of contributory negligence only where an assumption or risk has been unreasonable is also emphasized in a later case where it was said:

"* * * Whether plaintiff exposed herself intentionally *and unreasonably* to a danger that was known, or that should have been known, to her was for the jury to determine." (Italics supplied.) Johnson v. Evanski, 221 Minn. 323, 328, 22 N. W. (2d) 213, 216.

Certainly, on the facts of the present cases we cannot hold, as a *matter of law,* that Mrs. Schrader assumed an unreasonable risk in entering defendant's place of business to purchase a car. She

cannot be held to have assumed any risk at all unless the evidence shows that she knew of the peril which she faced. Defendant urges that Mrs. Schrader assumed the risk of entering his premises, because she testified that she had noticed the conditions of the car lot both during her visit there on November 14 and upon her entrance the night of the accident. We think there is no showing of assumption of risk as a matter of law. Mrs. Schrader testified that she did not see the rut where she fell and that the ice on the lot was covered with snow. On this evidence the jury was entitled to find that Mrs. Schrader was not fully aware of the peril which she faced. Whether she knew of the danger she faced was clearly a question of fact for the jury. Anderson v. Hegna, 212 Minn. 147, 2 N. W. (2d) 820; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213; Dore v. Swift & Co. 175 Minn. 545, 221 N. W. 904.

The only issue which remains is the one presented by defendant's contention that the evidence did not present a jury issue on the question of defendant's negligence being the proximate cause of the injury. This contention does not merit discussion in the light of the obvious causal connection between Mrs. Schrader's injury and the negligent manner in which the jury was justified in finding that defendant maintained his business premises.

The orders denying defendant's motions are affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.