WALTER J. STRONG v. CASPER F. SHEFVELAND.

81 N. W. (2d) 247.

February 15, 1957—No. 36,963.

*Arthur E. Arntson,* for appellant.
*Holst, Erickson, Vogel & Richardson,* for respondent.

NELSON, JUDGE.

This action for personal injuries grows out of an accident occurring February 18, 1955. Defendant appeals from an order denying his alternative motion for judgment notwithstanding a verdict for plaintiff or a new trial.

The facts upon which the verdict below rests are as follows: The defendant operates a motel and trailer camp in the city of Red Wing, Minnesota. The plaintiff, a retired locomotive engineer, was defendant's lessee. The relation of landlord and tenant grew out of a rental agreement involving trailer space and the right to use toilet, bathing, and laundry facilities at the motel building from which the defendant conducted his business operations. This arrangement included plaintiff's right to use the common approaches to the

motel building, a part of the motel area which had been reserved to defendant-owner as the landlord. The plaintiff, who was 75 years of age, had occupied his own trailer together with his wife upon the rented trailer space since September 4, 1954. In an area surrounding defendant's motel facilities there were several cabins; interspersed were spaces rented for trailer-house locations. The cabins and the trailer location involved here were located approximately 100 feet from the motel building in which were housed the general toilet, shower, and laundry facilities used by the tenants occupying cabins and trailer houses. These facilities were on the ground floor, and the cabin and trailer tenants when using them in the winter would walk upon paths which they shoveled or on paths made by walking on the snow.

Plaintiff's trailer had been placed to the north of the motel building. A path had led from the plaintiff's trailer to the motel building over the area where snow had previously fallen. A cabin occupied by another tenant, one Niedermeyer, was located to the northeast, in the vicinity of plaintiff's trailer. A path had likewise been shoveled through the snow which led from the Niedermeyer cabin to the motel building.

In leasing arrangements as to both trailer and cabin space, the agreement carried with it the right to use the general tenant facilities of the motel building. The common approaches had been retained by the landlord for the use in common by the different tenants in the motel area.

The testimony indicates that at the time of the accident there had been snow on the ground and that paths had become icy for a considerable period of time prior to the date of the accident. Earlier that day it began to rain and later turned to a drizzle which continued into the afternoon. At about 1:30 p. m. plaintiff left his trailer and walked to the motel building to make use of its restroom facilities. He walked along the path which had been shoveled and used by him when going to and returning from the motel building. Immediately after leaving the restroom facilities, plaintiff decided to pay a visit to Niedermeyer at his cabin. This was reached by a

shoveled path which was in common use. It was slippery in spots and had some water on it due to the drizzle, and it appears to be conceded that the plaintiff could have seen icy areas along the path. Indications are that there was at the time no snow on the path but that there was soft snow some four inches deep on both sides of it. It furthermore appears that the area between the motel building and plaintiff's trailer as well as the Niedermeyer cabin had been used by automobiles being driven by guests of the motel and members of defendant's family and that this had caused a packing down and hardening of the surface over the area. There was also a basketball court on the grounds used by defendant's son and his friends. The boys using this area were required at times to shovel snow from it leaving icy areas upon which cinders had been scattered from time to time. The edge of the basketball court formed a junction with the Niedermeyer path. Cinders had previously been hauled in and were available, but these had at no time been put to use to remedy the icy conditions over the paths and the common approach area. Neither cinders nor sand had been scattered to make either the approaches or the paths safe from icy conditions for use of the cabin and trailer tenants.

It does not appear that the tenants had undertaken the task of keeping the approaches free from snow and dangerous icy conditions as a part of their tenancy agreement so as to relieve the defendant from liability arising due to natural accumulations of ice and snow upon the common approaches. The record is barren of any agreement modifying the reservation to defendant of the area maintained for the common use of all the tenants as well as defendant and his family.

There is nothing in the testimony to indicate that there was another or different path leading to the Niedermeyer cabin which the plaintiff might have taken, nor does it appear that these paths were not in daily use by the tenants. After plaintiff had proceeded about 30 feet along the path toward the Niedermeyer cabin, he suddenly slipped and fell suffering a hip fracture.

Plaintiff instituted this action to recover damages for his personal injuries alleging that the accident and the resulting injury and damage were due to negligence on the part of the defendant in failing to keep the motel premises and the paths involved free from icy conditions and reasonably safe for such use as the trailer and cabin tenants were entitled to make of them.

Defendant by way of answer admitted the occurrence of the accident and the resulting injuries but specifically alleged that whatever injuries or damage plaintiff received was caused solely by the plaintiff's own negligence.

The issues presented on appeal are: (1) Was there evidence of negligence on the part of defendant proximately causing the accident; and (2) was plaintiff guilty of contributory negligence as a matter of law?

■ If we ascribe to plaintiff's evidence the most favorable aspect, to which it is entitled, the inference is clear that the defendant, as landlord, retained control over the facilities and approaches used in common by the different tenants in his motel area.

The trial court instructed the jury that all parts of defendant's motel premises not specifically leased to patrons were, under the evidence submitted, to be considered as retained under his control, as landlord, and that they were in fact under his control. This instruction was given subject to the qualification that it does not mean that the owner of the premises is a guarantor of the safety of the portions of the premises over which he retains control. After making this point clear, the court advised the jury that under the circumstances it was not required, in order to establish defendant's negligence, that he shall have had actual notice of the defects or dangerous conditions in question, it being enough under the laws as announced in the charge to make him negligent when facts are shown, from which it may fairly be deduced, that by the exercise of ordinary care he should have known of their existence. These instructions were predicated upon the rule generally applied in this state and elsewhere that, where the owner of business property leases a part thereof and retains in his control other parts which are necessary

to the leased portions thereof, he is subject to liability to his lessee or others upon the land with the consent of the lessee for bodily harm caused to them by permitting a dangerous condition upon that part of the premises in his control, if the lessor, by the exercise of reasonable care, would have discovered the condition and risk involved therein and could have made the condition safe.[1] This part of the instruction given was preceded by standard and detailed explanation of the terms negligence, contributory negligence, proximate cause, and the meaning thereof, and also who shall as between plaintiff and defendant assume the burden of proof, when determination must be made upon the facts, as to the separate acts of negligence alleged, and their relation to proximate cause.

There were no requests for instructions submitted and no exceptions taken to the court's charge. The main question raised in defendant's brief is whether the plaintiff was guilty of contributory negligence as a matter of law. There is no serious contention by defendant that his alleged negligence was not properly submitted to the jury as a fact question.

In reviewing the trial court's rulings on defendant's motions, the only question presented here is whether there was substantial evidence to sustain the verdict. When faced with a determination of that question, we must accept as true the evidence favorable to the party against whom the motions run, and he is entitled to the benefit of all favorable inferences that may reasonably be drawn therefrom. If the evidence so considered was such that reasonable men might reach different conclusions, then the case was one for the jury. Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395.

Generally, in our approach to the question presented on this appeal, we are concerned with the extent of the duties which the defendant, as landlord, owed to plaintiff as a tenant on his premises, under the circumstances revealed by the testimony. What care was defendant bound to exercise with respect to maintaining safe approaches used in common by his tenants between their cabins and trailers and the

---

[1] 10 Dunnell, Dig. (3 ed.) § 5369.

motel building from which the landlord conducted his business and where he provided general facilities for the use of all his tenants?

■ In Anderson v. Winkle, 213 Minn. 77, 80, 5 N. W. (2d) 355, 357, this court announced the rule applicable to business visitors by saying that "A possessor of premises used by business visitors, while not an insurer of their safety, is bound to exercise reasonable care to construct and to maintain his premises in a reasonably safe condition for their use." It was stressed that this duty is of a continuing nature and that reasonable inspection during such use is a duty incident to the maintenance of the premises.[2]

In Dore v. Swift & Co. 175 Minn. 545, 221 N. W. 904, we have a situation where the plaintiff, a woman, was seeking employment at the plant of defendant. She arrived at the plant about 7 a. m. following a night of sleet and snow. A guard on the premises directed her to the employment office, and he advised her (175 Minn. 546, 221 N. W. 905) : "Be kind of careful, it may be a little slippery here this morning." It was slippery. Plaintiff fell and was injured. The jury returned a verdict for plaintiff. On appeal this court held that defendant's negligence was a question of fact for the jury.

■ A similar situation received consideration in Evans v. Sears, Roebuck & Co. (Mo. App.) 104 S. W. (2d) 1035. In that case a customer slipped and fell on the icy and snow-covered driveway of a store's free parking lot. The defense was that weather conditions made it impossible to remove ice and snow from its parking lot within an hour after it stopped snowing and that no jury could be allowed to predicate a finding of negligence upon its failure to do so. The court refused to be concerned in that case with anything but defendant's alleged negligence as to the condition of the driveway. The court held, on the facts of that case, that defendant's negligence was amply sustained by the evidence showing failure to maintain a safe pedestrian entrance to his place of business. The situation in the above cases has a bearing on defendant's position in the instant

[2]Schrader v. Kriesel, *supra;* Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 499, 31 N. W. (2d) 332, 334; McGenty v. John A. Stephenson & Co. 218 Minn. 311, 314, 15 N. W. (2d) 874, 875; Iverson v. Quam, 226 Minn. 290, 32 N. W. (2d) 596.

case since his position is closely analogous to that of a possessor who permits visitors to enter for a purpose of his own. See, Prosser, Torts (2 ed.) § 80, pp. 471 to 473.

■ In Reardon v. Shimelman, 102 Conn. 383, 128 A. 705, 39 A. L. R. 287, it was held that an accumulation of ice and snow upon a common approach to a tenement house may impose upon the landlord a liability for injury due to it, provided he knew, or in the exercise of reasonable supervision or inspection ought to have known, of the existence of the dangerous condition and failed to exercise reasonable care to provide against injury by reason of it. In that case the plaintiff made a call upon one of the tenants, her particular purpose being to get two plates which she had left when attending a party held at the tenant's apartment some weeks before. Having completed her call, plaintiff passed along the walk, which was for a considerable space covered with ice and frozen snow and in a slippery and dangerous condition. No sand or ashes had been scattered over it. There was little if any direct evidence as to the length of time this condition had existed, but the facts reasonably indicated that it had been there for some days and also it appeared that the person in charge of the premises passed close by the spot in question in going to and coming from the apartment occupied by that person and could see it while sitting at one of her own windows. The plaintiff, sensing the condition to be dangerous, did not walk fast and was "picking her steps." She slipped, fell, and was injured. She sought recovery for her injuries. There was no evidence of any structural defect or of want of repairs. The difficulty was due to the icy condition of the walk. The Connecticut court said that (102 Conn. 386, 128 A. 706) :

"It is the law of this State, as elswhere, that, speaking generally, the landlord who rents the apartments in his building to various tenants, reserving control of the common approaches, is obligated to use reasonable care to keep those approaches reasonably safe for the use of the tenants; and that it is no defense that some one else is charged by him with, or assumes the performance of, that duty, if it be not performed. [Cases cited.] This obligation of the land-

lord extends also to all those who have lawful occasion to visit the tenants for social or business purposes. A right of ingress and egress for all such persons is essential not merely to the enjoyment of the rented premises by the tenants but also to the renting of them by the landlord; it is part of that for the use of which he is paid, and it exists for the mutual benefit of landlord and tenants alike. [Cases cited.]"

It was stated by the court in the Reardon case that, since it is the duty of the landlord to exercise reasonable care to prevent the occurrence of defective or dangerous conditions in the common approaches, the fact that a particular danger arose from the natural fall of snow or the freezing of ice can afford no ground of distinction as between that situation and those arising from having permitted other defects to arise and occur and continue due to a failure of reasonable inspection of such common approaches upon the premises. For other cases involving the use of common approaches maintained by landlord, see Offutt v. O'Leary, 204 Ky. 726, 265 S. W. 296; Paternostro v. Bradley (Tex. Civ. App.) 262 S. W. 896; Fortunato v. Shenango Limestone Co. 278 Pa. 499, 123 A. 482.

It is apparent that the court in the Reardon case was not impressed by the argument, there made, that since accumulations of snow and ice are due to natural causes the landlord would owe no duty of removal or correction of dangerous condition thus arising because not permanent. The court pointed out that other defects which arise must likewise often be ascribed to natural causes, such as deterioration of wood, metals, and other materials and elements that go into the construction and maintenance of steps, walks, and approaches. Prosser in his Law of Torts tells us that the prevailing view, although by a scant margin, is that the duty extends to conditions of purely natural origin, such as ice and snow, referring to the Reardon case among authorities which he cites on that point. See, Prosser, Torts (2 ed.) § 80, entitled "Parts of Premises Retained in Control of Lessor."

■ Defendant argues that plaintiff could plainly see the icy condition of the Niedermeyer path, also that there was water upon it

due to the afternoon drizzle, and that under the circumstances it was incumbent upon him to walk around such spots through the snow, this being only four inches in depth on either side. No attempt is made to show that another path or approach was available. It had been shown that cinders had been previously hauled in and scattered when icy conditions prevailed on the basketball court. Defendant made no effort to show that an existing safer path or route could have been taken by plaintiff on the occasion in question. The court has heretofore said, under more or less similar circumstances, that the injured party was not charged with the burden of establishing the impracticability or impossibility of using other streets or sidewalks; that the burden of proving the availability of a safer route of travel was on the challenger. Slindee v. City of St. Paul, 219 Minn. 428, 18 N. W. (2d) 128.

The presumption advanced by defendant—that it was plaintiff's duty when proceeding along the Niedermeyer path to walk through the surrounding snow in the area to avoid any and all ice on the path—together with the circumstances implicit here in the fact situations, and the inferences thereby presented involve, we believe, pure questions of fact, the determination of which were for the jury.

Since defendant makes no effort to show other and safer paths available for tenant travel on the motel area, the situation seems to narrow down to plaintiff's "necessity" to use the path he traveled rather than circling through the snow-covered area whenever encountering icy portions on the path he traveled to the Niedermeyer cabin. The tenant's paths must have been in use daily in the travel to and from the motel building for the common use of the facilities, only made available to them there. In Slindee v. City of St. Paul, *supra,* where a somewhat similar theory was advanced by defendant, this court said that (219 Minn. 430, 18 N. W. [2d] 129) "it would have restricted plaintiff's use of this sidewalk to cases of *necessity* only, because by its own negligence in the care of the walk, which was under its sole jurisdiction and control, it had permitted it to become so bad that uses other than *necessary* ones were practically

forbidden. That, of course, is a mere assertion and has no foundation in law, logic, or custom."

The proprieties of submitting defendant's negligence to the jury has not been questioned. We are only concerned with defendant's strenuous contention that plaintiff, as a matter of law, was guilty of contributory negligence preventing recovery. We have ordinarily defined contributory negligence as a "want of ordinary or reasonable care on the part of a person injured by the negligence of another directly contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." 13 Dunnell, Dig. (3 ed.) § 7012. The underlying basis for the doctrine is as well established as the principle of actionable negligence itself.

We conclude that the many factors and circumstances involved in the instant case make the question of plaintiff's contributory negligence one for the jury.

Affirmed.